IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                              No. 25-cr-20313-SHL

BARRINGTON HARWELL,

      Defendant.

---

MOTION TO SUPPRESS
AND INCORPORATED MEMORANDUM OF LAW

---

COMES NOW, Barrington Harwell, by and through his appointed counsel of record, Presita R. West, Assistant Federal Defender, pursuant to Federal Rule of Criminal Procedure 12(b)(3), and for his Motion to Suppress, states as follows:

## I.    **<u>INTRODUCTION</u>**

The following information is taken from Tennessee Highway Patrol Trooper Malone's body worn camera ("BWC") footage, his dashboard camera ("dash cam") footage, and documents produced in discovery to date.

In the early afternoon of October 20, 2025, Trooper Malone initiated a traffic stop of a black Audi.  The Audi was registered to Mr. Harwell, and he was the driver.  Trooper Malone approached the passenger side, where the passenger, Marvin Hodo, handed him his identification.  Trooper Malone told Mr. Harwell and Mr. Hodo why he had pulled them over and then used his tint meter to test the window tint.  The tint was indeed too dark under Tennessee law.

Trooper Malone then asked Mr. Harwell and Mr. Hodo to step out of the vehicle.  In the incident report it says that he did so for officer safety because it appeared that the Audi had attempted to accelerate when the driver saw the marked patrol car in an attempt to quickly hide something or possibly evade the trooper.  Trooper Malone's dash cam video does not support this assertion.

As Mr. Hodo exited the vehicle, he is seen on Trooper Malone's BWC footage asking why he needs to get out of the vehicle.  Trooper Malone tells him that he will let him know "in a sec." Mr. Hodo is then seen telling Trooper Malone that he has a firearm.  Trooper Malone asks him where it is, and Mr. Hodo lifts his shirt and says it is on his hip.  Mr. Hodo let Trooper Malone retrieve the firearm and make it safe.  Trooper Malone is then seen asking Mr. Hodo if there is anything else in the vehicle.  Mr. Hodo tells him that he has another firearm, and it is under the driver's seat.  That firearm is also retrieved by another officer and made safe.

Trooper Malone is then seen informing Mr. Harwell and Mr. Hodo that as he approached the vehicle, he smelled a slight odor of marijuana and that is why he removed them from the car. Both men are seen vehemently denying that there was any marijuana in the car.  They also denied having smoked marijuana in the car.  Another Tropper can be also heard repeatedly asking Trooper Malone if he smelled marijuana.

At that point (and at other points, as well), Trooper Malone turns off the audio on his BWC. He is seen leaning into the car to look into the center console and rummaging around in the passenger side door pocket.  He then turns the audio back on and asks Mr. Harwell, "You gave me consent to search, right?"  Mr. Harwell replies that he did not, but also notes that the officers were already searching the car. Trooper Malone is heard explaining that police are permitted to retrieve firearms and make them safe.

Next, either Mr. Harwell or Mr. Hodo is heard asking why they were removed from the car. Trooper Malone is heard replying that he is permitted to remove anyone from a vehicle. Then he modifies that reply, stating they were removed for officer safety. He is heard explaining that because there were two firearms in the vehicle, he was permitted to ask them to get out of the vehicle for officer safety. This, despite the fact that Trooper Malone asked the men to exit the vehicle before he was ever aware that Mr. Hodo had a firearm on his person and one under the driver's seat.

A canine was dispatched to the scene. Apparently, the dog alerted, though that is not clearly evident on Trooper Malone's body-worn camera footage. The troopers then searched the vehicle and found no marijuana.

As a result of the foregoing, Mr. Harwell has been charged with being a felon in knowing possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (See Indictment (Penalty Copy), ECF No. 23, PageID 38.) As explained further below, Mr. Harwell moves to suppress the evidence against him because the troopers exceeded the scope of the traffic stop.

## II.    ARGUMENTS AND AUTHORITIES

The reasonableness of police conduct in performing a traffic stop is evaluated under the principles set forth in Terry v. Ohio, 392 U.S. 1, 88 (1968). Consistent with the Fourth Amendment, a police officer may make a traffic stop if the officer "possess[es] either probable cause of a civil infraction or reasonable suspicion of criminal activity." United States v. Lyons, 687 F.3d 754, 763 (6th Cir. 2012) (citing Gaddis ex rel. Gaddis v. Redford Twp., 364 F.3d 763, 771 n.6 (6th Cir. 2004)). When courts evaluate the reasonableness of a Terry stop, they engage in a two-part analysis. United States v. Mays, 643 F.3d 537, 541 (6th Cir. 2011) (citation omitted). First, the court must "ask whether there was a proper basis for the stop." Id. (quoting United States

v. Smith, 594 F.3d 530, 536 (6th Cir. 2010)).  If the stop was proper, the court must then "determine whether the degree of intrusion . . . was reasonably related in scope to the situation at hand."  Id. at 542.  A lawful traffic stop "may become an impermissible 'seizure if it occurs over an unreasonable period of time or under unreasonable circumstances.'" United States v. Davis, 430 F.3d 345, 354 (6th Cir. 2005) (quoting United States v. Orsolini, 300 F.3d 724, 729-30 (6th Cir. 2002)).

In this case, it cannot be contested that Trooper Malone had probable cause to stop the Audi for a tint violation.  See Tenn. Code Ann. § 55-9-107(c).  And, in a traffic-stop setting, the first Terry condition, the lawful investigatory stop, is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation.  Arizona v. Johnson, 129 S. Ct. 781, 784 (2009).  The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity.  Id.

Thus, the issue in this case is whether the lawful traffic stop became an illegal seizure because it occurred under unreasonable circumstances.  Rodriguez v. United States, 575 U.S. 348 (2015).  In Rodriguez, a dog sniff case, the Supreme Court explained that a seizure for a traffic violation justifies a police investigation of that violation.  Id. at 354.  Because addressing the infraction is the purpose of the stop, it may last no longer than is necessary to effectuate that purpose, and authority for the seizure ends when the tasks tied to the traffic infraction are, or reasonably should have been, completed.  Id.  The Court held that while a police officer "may conduct certain unrelated checks during an otherwise lawful traffic stop . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual."  Id. at 355.  Thus, the Court concluded that police officers may not "extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a

dog sniff"—even where the delay for the canine sweep adds only de minimis time to the traffic stop. Id. at 1613-14, 1616.

The absence of reasonable suspicion was critical to Rodriguez's holding. The Supreme Court not only framed the issue that way, Rodriguez, 135 S. Ct. at 1614 ("We granted certiorari to resolve . . . whether police routinely may extend an otherwise-complete traffic stop, absent reasonable suspicion . . . ."), but also cabined its holding to situations where reasonable suspicion is lacking, id. at 1615 ("[Police] may not [conduct unrelated investigative checks during a traffic stop] in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining the individual."). In short, in the absence of reasonable suspicion, the Fourth Amendment does not permit police to extend the stop in order to investigate matters wholly unrelated to the original basis for the stop.

This concept was already well-ingrained in the Sixth Circuit, which has held that the police may extend a stop beyond the scope of what was originally permissible if something happens during the stop to cause the officer to have a reasonable and articulable suspicion that criminal activity is afoot. See, e.g., United States v. Stepp, 680 F.3d 651, 661 (6th Cir. 2012). Without such reasonable suspicion, however, all of the officer's actions must be reasonably related in scope to circumstances justifying the original interference. Id.

The concept of reasonable suspicion is somewhat abstract. United States v. Arvizu, 534 U.S. 266, 274 (2002). Reviewing courts are to consider the totality of the circumstances in evaluating the officer's suspicion, asking whether the officer has a particularized and objective basis for suspecting legal wrongdoing, and giving due weight to inferences the officer draws in light of his own experience and specialized training. Id. at 273; see also United States v. Martin, 289 F.3d 392, 398 (6th Cir. 2002).

5

The totality of the circumstances in this case indicate that there was no particularized and objective basis for Trooper Malone to conduct unrelated investigative checks in a way that prolonged the stop beyond its purpose of investigating the traffic infraction. There was no additional reasonable suspicion to justify extending the traffic stop in order to conduct a dog sniff.

Trooper Malone is extremely unclear about the basis for any reasonable suspicion in this case. First, his incident report states it was for officer safety because Mr. Harwell allegedly sped up and tried to hide something when he noticed a marked Tennessee Highway Patrol car following him. But Trooper Malone's dash cam video shows Mr. Harwell maintaining his speed as the patrol car follows. The video shows that the patrol car was quite a distance behind Mr. Harwell's vehicle at first, so it is hard to fathom how Trooper Malone could see Mr. Harwell attempting to hide anything. As the patrol car draws near, the initiation of the patrol car's siren is heard on the dash cam video. Mr. Harwell is seen immediately pulling over and stopping. Even Trooper Malone can be heard saying, "He's stopping."

Trooper Malone's next reason is that there was a slight odor of marijuana when he approached the vehicle. This fact is not in Trooper Malone's incident report. Moreover, Trooper Malone is not heard mentioning this factor at all until the men have exited the vehicle. Another trooper can be heard on the BWC footage asking Trooper Malone repeatedly if he smelled marijuana when he made the stop. This is likely because that Trooper did not smell anything. And, indeed, no marijuana was found in the vehicle.

Trooper Malone's final reason for getting the men out of the vehicle was again based on a claim of officer safety. This time, he said it was because Mr. Hodo had a firearm on his person and another one under the driver's seat. But Trooper Malone did not know this until the men were exiting the vehicle. That is when Mr. Hodo told him about the firearms.

6

The bottom line is that Trooper Malone knew that he did not have the requisite reasonable suspicion to prolong the traffic stop in order to conduct unrelated investigative activities in the hopes that something might turn up. That is why he attempted to create it <u>after</u> he asked the men to exit the vehicle. His actions were not reasonably related in scope to circumstances justifying the original interference. Trooper Malone was not addressing the tint infraction which was the purpose of the stop. He had everything he needed—the window tint measurement, Mr. Harwell's and Mr. Hodo's identification, and the vehicle's registration—when he asked the men to exit the vehicle. And the Supreme Court in <u>Rodriguez</u> explained that "[i]f an officer can complete traffic-based inquiries expeditiously, then that is the amount of time reasonably required to complete the stop's mission." <u>Rodriguez</u>, 575 U.S. at 357  (quoting <u>Illinois v. Caballes</u>, 543 U.S. 405, 407 (2005) (internal quotations and brackets omitted)). The Court frowned upon police methods used to "earn bonus time to pursue an unrelated criminal investigation." <u>Id.</u>; <u>see</u> <u>also</u> <u>United States v. Stepp</u>, 680 F.3d 651, 662 (6th Cir. 2012) ("Because a crafty officer, knowing this rule, may simply delay writing a ticket for the initial traffic violation until after she has satisfied herself that all of her hunches were unfounded, we also treat the unreasonable extension of a not-yet-completed traffic stop as a seizure.") (quoting United States v. Everett, 601 F.3d 484, 494 (6th Cir. 2010)). The time it <u>should</u> have taken to simply issue the window tint citation was the amount of time reasonably required to complete <u>this</u> stop's mission.

Nor was there any indication that the men were armed and dangerous. They were sitting in the vehicle quietly, complying with Trooper Malone's requests for documents. This stop lasted longer than necessary to effectuate the purpose of the stop, and the authority for the seizure ended when the tasks tied to the traffic infraction reasonably should have been completed.

Because Trooper Malone illegally prolonged the traffic stop, Mr. Harwell respectfully requests this Court to suppress the evidence against him,

## III.   CONCLUSION

WHEREFORE, for all of the foregoing reasons, Mr. Harwell respectfully requests this Court to suppress all of the evidence resulting from his illegal seizure and the subsequent search of the vehicle.

Respectfully submitted,

s/ PRESITA R. WEST
Assistant Federal Defender
200 Jefferson Avenue, Suite 200
Memphis, TN 38103
(901) 544-3895

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing document was forwarded by electronic means via the Court's electronic filing system to Mr. William Crow, Assistant U.S. Attorney, 167 N. Main, Suite 800, Memphis, TN 38103, this 13th day of March, 2026.

s/ PRESITA R. WEST
Assistant Federal Defender